**FARRIS FASHIONS, INC.,**
**Petitioner/Cross–**
**Respondent,**

v.

**NATIONAL LABOR RELATIONS**
**BOARD, Respondent/Cross–**
**Petitioner.**

Nos. 93–3827, 93–4082.

United States Court of Appeals,
Eighth Circuit.

Submitted June 13, 1994.

Decided Aug. 15, 1994.

Order Denying Rehearing Nov. 14, 1994.

---

Barry Frederick, Birmingham, AL, argued (Christopher O. Parker, Dan P. Kennett, Barbara W. Webb, and Charles A. Powell, II, on the brief), for petitioner.

William Bernstein, Washington, DC, argued (Aileen A. Armstrong, on the brief), for respondent.

Before MORRIS SHEPPARD ARNOLD, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and MELLOY,* District Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

In October, 1990, the Amalgamated Clothing and Textile Workers Union began an organizing drive at Farris Fashions, Inc., which manufactures clothing at two factories in Arkansas. The union lost a representation election at those factories about two months later. The union subsequently filed charges of unfair labor practices with the National Labor Relations Board (NLRB) against the company. The regional director of the NLRB issued a complaint against the company in March, 1991.

After a ten-day hearing in mid–1991, an administrative law judge found for the union in mid–1992. The administrative law judge ordered the company to bargain with the union, to cease certain specific practices with respect to discouraging union membership among its employees, to reinstate two employees who had been laid off, to post various notices at its factories with regard to employees' rights, and to provide various records to the NLRB. A three-member panel of the NLRB adopted the administrative law judge's order in September, 1993, with a few

---

* The HONORABLE MICHAEL J. MELLOY, Chief Judge, United States District Court for the North-ern District of Iowa, sitting by designation.

modifications. The company petitions for review of the NLRB order; the NLRB cross-applies for enforcement of its order.

## I.

The principal conduct at issue in this case is the company president's alleged statements with respect to whether the company would close if the employees voted to be represented by the union. During the administrative hearing in this case, the company president flatly denied that he had made such statements ("That's against the law," "I've always been taught that you can't do that," "I went to great expense and trouble not to say that," "We were very careful not to say those words"). The administrative law judge found, however, that the company president, various supervisors, and at least one designated agent of the company president had told employees that the company "had the right, the absolute right, and it might or [would] recognize or use that right to shut down business completely if the union came in; that if the employees did not stop messing with the Union organizers he … would shut the doors—close the plant and convert it into a chicken coop and sell the chicken manure to farmers; that Wal–Mart [the company's only customer] would pull its orders … with [the company], either because unionism would force [the company] to increase its prices or because Wal–Mart would not do business with a unionized company; that [the company] would not then have a contract and [would] have to close down and the employees [would] be without jobs; and that [the company] had the money to be able to close down in the event of unionization." The administrative law judge held in addition that those statements constituted an unfair labor practice.

We have read very carefully the transcript of the administrative hearing. The administrative law judge's factual findings with respect to what statements were made are well supported by "substantial evidence on the record considered as a whole," see 29 U.S.C. § 160(e), § 160(f), see also 5 U.S.C. § 706(2)(E). The issue for this court, then, is whether such statements constitute an unfair labor practice, i.e., a practice that "interfere[s] with, restrain[s], or coerce[s] employees in the exercise of the rights," see 29 U.S.C. § 158(a)(1), "to form, join, or assist labor organizations," see 29 U.S.C. § 157.

■ In interpreting federal labor law, the Supreme Court has explicitly stated that an employer has the absolute right "to go out of business," even if that action is "motivated … by spite against the union." Textile Workers Union of America v. Darlington Manufacturing Co., 380 U.S. 263, 272, 85 S.Ct. 994, 1000, 13 L.Ed.2d 827 (1965), see also id. at 274, 85 S.Ct. at 1001. The Supreme Court has also stated that an employer may "announc[e] a decision to close" in the event of unionization that has "already [been] reached by the board of directors or other management authority." Id. at 274 n. 20, 85 S.Ct. at 1001 n. 20. An employer may not, however, "interfer[e] with employee organizational activities by threatening to close [a] plant" in response to a union organizing drive if that decision has not definitively been made at the time of the announcement. Id.; see also 29 U.S.C. § 158(c) ("[t]he expressing of any views, argument, or opinion … shall not constitute … an unfair labor practice … if such expression contains no threat of reprisal").

■ An employer may "make a prediction as to the precise effects he believes unionization will have on his company. In such a case, however, the prediction must be carefully phrased on the basis of objective fact … to convey a management decision already arrived at to close the plant in case of unionization." National Labor Relations Board v. Gissel Packing Company, Inc., 395 U.S. 575, 618, 89 S.Ct. 1918, 1942, 23 L.Ed.2d 547 (1969). Otherwise, "the statement is no longer a reasonable prediction based on available facts but a threat of retaliation based on misrepresentation and coercion." Id.; see also Wiljef Transportation, Inc. v. National Labor Relations Board, 946 F.2d 1308, 1313 (7th Cir.1991) ("objective indicia of reliability are required").

■ According to testimony presented at the administrative hearing, shortly after the company president became aware of the organizing drive, he told his accountant that "he would close the plant"; he contacted an equipment sales broker, who "went over some individual pieces as to what [the broker] thought that they would bring" if sold

and "did pretty well inventory his equipment"; he told a subcontractor that he would "close her down and find something else to do for a living"; and he asked another accountant "to examine the financial records" of the company "to determine . . . his liquidity" and cash flow and then had that accountant present those figures at a meeting of the employees, stating that the company president "had sufficient assets to cover his debts, and he could close, walk away, with money in his pocket." As the administrative law judge remarked, however, the company president never obtained a written appraisal of the equipment inventoried or contacted a real estate agent or any prospective buyers. The administrative law judge concluded that the actions of the company president did not, therefore, reflect a "definitive decision to close [the] plant in the event of unionization." Also supporting that conclusion, in our view, are the company president's own statements in meetings that he would "*consider* exercising [his] option" and that "I'm *not* saying that [I] will but if someone . . . says 'we have no faith in You,' what am I supposed to do?" (emphasis supplied). One of the letters from the company president to the employees stated, in addition, that "I am not saying the Company will close and I am not saying the Company will NOT close."

After reading the entire transcript of the administrative hearing (close to 1,650 pages) and examining all of the exhibits offered, we believe that "substantial evidence on the record considered as a whole," *see* 29 U.S.C. § 160(e), § 160(f), *see also* 5 U.S.C. § 706(2)(E), supports the administrative law judge's conclusion that the company president had not in fact made a definitive decision to close if the union won and the administrative law judge's concomitant determination that the company president's statements about closing the company were instead threats designed to discourage his employees from voting for the union.

### II.

We have considered the other issues raised in this case and hold that they too are supported by "substantial evidence on the record considered as a whole," *see* 29 U.S.C. § 160(e), § 160(f), *see also* 5 U.S.C. § 706(2)(E).

---

\* McMillian, Beam, and Hansen, Circuit Judges, would grant the suggestion for rehearing en

### III.

For the reasons stated, we uphold the NLRB decision and grant the NLRB's application for enforcement of its order.

### ORDER

Nov. 14, 1994

The petition for rehearing by the panel is denied. The panel notes that the petitioner never objected to the burden of proof used by the administrative law judge (the closest objection was to the "standard of proof employed," characterized only as "erroneous as a matter of fact and law") and failed to submit to this court a copy of the brief that accompanied the objections stated.